[Civ. No. 16291.  Second Dist., Div. One.  Sept. 15, 1948.]

RUBY R. GOTCHER, Respondent, v. JOHN D. GOTCHER et al., Defendants; CATHERINE A. McKENNA, Appellant.

564

Catherine A. McKenna, in pro. per., for Appellant.

Theodore Rosenthal for Respondent.

WHITE, J. — Defendant Catherine A. McKenna has appealed from a judgment adverse to her in an action brought by Ruby R. Gotcher to quiet title to real property located in the city of Los Angeles. Defendant John D. Gotcher was not served with summons and did not appear, and at the trial the action was dismissed as to him.

The property in question was conveyed by a grant deed from Cornelia Christie, dated January 2, 1946, recorded January 23, 1946, to "John D. Gotcher and Ruby R. Gotcher, Husband wife, as joint tenants." On March 11, 1947, John D. Gotcher executed and delivered a quitclaim deed to "Ruby R. Gotcher, a married woman, as her sole and separate property, and in her separate right." This deed was recorded March 13, 1947.

In answer to plaintiff's complaint, defendant Catherine A. McKenna alleged that under the deed from Cornelia Christie all that was conveyed or intended to be conveyed to plaintiff "was a contingment right to one-half of the net profits, to be realized, only upon a sale of the land for an amount over and above the purchase price, upkeep, repairs, taxes interest on Trust deed to Cornelia Christie, in the sum of $10,500.00, all of which amounts were paid by and from the separate funds and monies of the said John D. Gotcher." She further denied that John D. Gotcher made or intended to make any conveyance to Ruby R. Gotcher, and asserted that in connection with a proposed sale, the plaintiff "represented and stated to John D. Gotcher, that if he would execute and place in escrow a quitclaim deed to Ruby Gotcher that it would expidite the closing of the sale. That relying on such representations made by the said Ruby Gotcher, John Gotcher, did execute a quitclaim deed to Ruby Gotcher, to be placed in the escrow and to be used only for the purpose of consummating the said sale . . . That the sale was not made and the deed was not delivered to Ruby Gotcher, as a conveyance, or to be a conveyance to her of any interest in the property, and further alleges that plaintiff Ruby Gotcher, secured possession of the said quitclaim deed without the knowledge or consent of the said John D. Gotcher, and caused it to be recorded . . . and without any consideration of any kind to him for the said deed. That said John D. Gotcher did not know that said quitclaim deed had been so wrongfully secured from the escrow and recorded . . . until on or about 1st day of May, 1947,. . . . ." The answer contained the further allegation that "this defendant Catherine A. McKenna, now is and has been since the 30th day of April, 1947, the owner in fee of all of title and interest of the said John D. Gotcher, and which he ever had or formerly owned in the said real property, which said deed was made for a valuable consideration, and has been duly recorded. . . ."

The trial court found that the quitclaim deed from John D. Gotcher to Ruby Gotcher was executed and delivered for a valuable consideration and thereby conveyed all of his interest in the property to Ruby R. Gotcher as her separate property; and further found that all averments of the answer inconsistent with plaintiff's complaint were untrue.

The property here involved, a rooming house, was purchased for $13,500, of which $3,000 was paid in cash, the cash representing money saved from the earnings of John

D. Gotcher while in the merchant marine. The note and trust deed securing the balance were executed by both Mr. and Mrs. Gotcher. It was agreed that Mrs. Gotcher was to run the rooming house. At the time of the purchase the house was under lease to a lessee who owned the furniture. In May, 1946, Mr. and Mrs. Gotcher purchased the lease and the furniture and took possession of the property, making their home there. They paid $2,000 for the furniture and lease, securing $1,500 of this amount from a finance company by a loan on the furniture, both Mr. and Mrs. Gotcher executing the note and mortgage. In December, 1946, they granted to S. Angus an option to purchase the property and furniture and deposited a deed in escrow, but the escrow was never closed nor the deed delivered.

In February, 1947, Mrs. Gotcher brought an action for separate maintenance against Mr. Gotcher, and a temporary restraining order was issued restraining Mr. Gotcher from conveying the property. Thereafter, to quote from respondent's brief, ''the parties got together and John D. Gotcher executed a quitclaim deed to respondent, in consideration of respondent's joining with said John D. Gotcher in executing a bill of sale covering the furniture, to Dag Var, and thereby obtaining for John Gotcher $3,000.00.''

Appellant contends that the findings of fact are mere conclusions of law, that the court failed to find on material issues raised by the answer, and that the evidence, without conflict, required that findings be made in her favor. It is urged that the evidence requires a finding that the insertion of the name of Mrs. Gotcher as a joint tenant with Mr. Gotcher was procured by fraud; that the quitclaim deed of March 11, from Mr. Gotcher to Mrs. Gotcher likewise was fraudulently secured, fraudulently taken from an escrow file and recorded. It is to be noted in this connection that these claims are not being urged by Mrs. McKenna's grantor, John D. Gotcher, as he did not appear in the action. We find in the record evidence to support the express finding of the trial court that the quitclaim deed of March 11 was duly executed and delivered by Mr. Gotcher for a valuable consideration, and recorded March 13, 1947, and it necessarily follows that Mrs. McKenna acquired no title by virtue of the subsequently executed deed to her of April 30, 1947. On March 7, 1947, Mr. and Mrs. Gotcher agreed in writing as follows:

"It is agreed and understood that Mr. John Gotcher is to receive a $1600.00 note plus $1400.00 in cash—making a total of $3,000.00 for his equity in *property* and furniture of 933 So. Bonnie Brae St. upon signing of quit deed to said property. He is signing an agreement of sale on furniture and lease on said property with this understanding, handled by Mill-Edwards-Mill Brokers—handled by Wm. H. Knox."

The testimony of Mr. Knox, the salesman who drew the foregoing agreement, as well as other testimony, was to the effect that all Mr. Gotcher wanted was to get his money out of the venture; that to do so it was necessary to secure the cooperation of his joint tenant. The husband and wife were constantly at odds, and the outcome was that Mr. Gotcher executed the quitclaim deed and in return received $3,000, partly in cash and the balance represented by the $1,600 note. The agreement above quoted negatives appellant's contention that Mr. Gotcher made only a conditional delivery of the quitclaim deed.

There is no merit to the claim that the insertion of Mrs. Gotcher's name as a joint tenant in the deed from Mrs. Christie was procured by fraud. Mr. Gotcher himself testified, ". . . Ruby and I talked it over, and she said she would run the place and take care of it while I worked, and so that is when I made up my mind to buy the property. . . . Mrs. Christie asked me there at the escrow table if I didn't think it would be nice to make a joint tenancy with me and maybe she (Mrs. Gotcher) would be more interested in running the place and keeping it up, so I decided after a couple of seconds and said, 'Yes' . . . ." Mr. Gotcher further testified that the purpose of the transaction was to take the place and resell it, and "I was to get back the $3,000 for the down payment, and we would pay Mrs. Christie off, pay the furniture off, and what was profits we would divide between us."

It is urged that Mrs. Gotcher had secured the property in her name as a joint tenant by trick and promise to Mr. Gotcher that she would assist in the care and the sale thereof, when her real purpose was to get such a hold on the title that she would finally get it away from him. There is no substantial evidence to support a finding that such was her purpose.

Although she did not set it forth in her answer, appellant also claims title through an assignment by S. Angus of his interest in the option to purchase given by Mr. and Mrs. Gotcher, dated December 21, 1946. Mr. Angus never acquired

any title. Although a deed to him had been deposited in escrow, the escrow was not completed, but canceled, and the funds deposited withdrawn.

Appellant makes the point that the quitclaim deed was void because it was in violation of the restraining order. There is no merit to this contention. The order was procured by Mrs. Gotcher and was solely for her benefit, and could be waived by her. Further, if there was, technically, a violation, neither Mr. Gotcher nor his grantee can be heard to complain, since Mr. Gotcher could not take advantage of his own wrong.

Appellant introduced evidence that Mr. and Mrs. Gotcher had been divorced in Oklahoma in 1928. It appears that after the divorce they again lived together in Oklahoma as well as in California, and at the time of the transactions hereinbefore related were holding themselves out as husband and wife. It is urged by appellant that as there was no marriage there could be no community, and that the property was therefore the separate property of Mr. Gotcher. This contention becomes immaterial because the record discloses substantial evidence to support a finding that John D. Gotcher made a voluntary transfer of his interest for a good and valuable consideration, and the court so found.

Appellant's complaint as to the form of the findings and that more specific findings should have been made can be of no avail. The plaintiff pleaded her chain of title, and the court found all the allegations of her complaint to be true. It is apparent that had more specific findings been made they would have been adverse to appellant.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied September 30, 1948, and appellant's petition for a hearing by the Supreme Court was denied November 8, 1948.